COURT OF APPEALS OF VIRGINIA

Present:    Judges Elder, Powell and Senior Judge Coleman
Argued at Richmond, Virginia


MELISSA ANNETTE McQUINN

                                                MEMORANDUM OPINION[*] BY
v.        Record No. 0404-08-2                  JUDGE SAM W. COLEMAN III
                                                JUNE 9, 2009
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Gary A. Hicks, Judge

> Samuel P. Simpson, V (Montgomery & Simpson, LLP, on brief), for
> appellant.
>
> Joshua M. Didlake, Assistant Attorney General (Robert F.
> McDonnell, Attorney General, on brief), for appellee.


Melissa Annette McQuinn, appellant, appeals her convictions for one count of grand

larceny in violation of Code § 18.2-95 and two counts of uttering a forged traveler's check in

violation of Code § 18.2-172.  On appeal, she contends the evidence was insufficient to prove

that she had fraudulent intent and that she knew the traveler's checks were forged or counterfeit

when she endorsed or presented them for payment.  We affirm the convictions.

Background

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App.

438, 443, 358 S.E.2d 415, 418 (1987)).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On August 5, 2007, appellant purchased items from a Wal-Mart store using two $500 American Express Traveler's Cheques. The checks were made payable to appellant and contained appellant's signature on the top line of the check designated "Sign here immediately upon receipt of this traveler's cheque." Appellant's signature was also on the bottom line designated "Countersign here in presence of person cashing." The next day, appellant returned to the same store and attempted additional purchases using American Express Traveler's Cheques. However, on this date, a store supervisor advised appellant that she would have to contact American Express to verify the authenticity of the checks before accepting them. Appellant responded that she had recently used other American Express Traveler's Cheques at anotherWal-Mart location and she did not understand the need to now contact American Express. Appellant took the traveler's checks and left the store without completing the purchase or waiting for the checks to be verified.

Upon subsequent investigation Wal-Mart determined that the traveler's checks appellant had endorsed and negotiated on August 5, 2007 to purchase merchandise contained invalid serial numbers and were counterfeit. Several days later, Investigator Kevin Walker interviewed appellant. She told Walker that she had found the traveler's checks in the parking lot of a convenience store. She stated that a friend advised her to consider the checks as cash so she decided to use them. Appellant admitted that on August 5, 2007, she endorsed and passed the checks to purchase merchandise at Wal-Mart. She acknowledged to Walker that she "probably" should not have used the checks since they "probably belonged to someone else." Appellant said she did not know the checks were counterfeit and would not have endorsed or negotiated them had she known they were counterfeit. She stated that she would have "turned the checks in" if they had contained a name. Appellant said she considered the checks "a blessing" because she did not have "a lot of money."

The trial court found appellant guilty of grand larceny and two counts of uttering with the intent to defraud a forged traveler's check in violation of Code § 18.2-172. Appellant appeals the convictions.

Analysis

Appellant's indictments charged that she twice uttered with the intent to defraud a forged American Express Traveler's Cheque in violation of Code § 18.2-172. Code § 18.2-172 reads in relevant part: "If any person forge any writing . . . to the prejudice of another's right, or utter, or attempt to employ as true, such forged writing, knowing it to be forged, he shall be guilty of a Class 5 felony."

Appellant argues she did not know the traveler's checks were counterfeit and, thus, she did not know that she was uttering a forged document. She contends she found what she believed were legitimate traveler's checks that were the equivalent of money. Therefore, she had no fraudulent intent when passing or uttering the checks and, thus, had no larcenous intent when receiving merchandise in exchange for the checks.

Contrary to appellant's assertion, in order to prove a violation of Code § 18.2-172, the Commonwealth was not required to prove that appellant knew the traveler's checks were "counterfeit" in the sense that the actual checks were imitation or bogus traveler's checks. Rather, Code § 18.2-172 provides that it is unlawful to forge "any writing" or to utter such forged writing knowing it to be forged. Forgery "is defined as 'the false making or materially altering with the intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of legal liability.'" Fitzgerald v. Commonwealth, 227 Va. 171, 173, 313 S.E.2d 394, 395 (1984) (quoting Bullock v. Commonwealth, 205 Va. 558, 561, 138 S.E.2d 261, 263 (1964)) (affirming convictions for forgery of blank checks stolen from a business).

"A check which has been fraudulently written or altered in a manner that possibly will operate to the injury of another constitutes a forgery." Muhammad v. Commonwealth, 13 Va. App. 194, 196, 409 S.E.2d 818, 819 (1991) (affirming conviction for forgery and uttering of a check stolen from a business and endorsed by accused). Forgery is "[t]he act of fraudulently making a false document or altering a real one to be used as if genuine." Black's Law Dictionary 677 (8th ed. 1999).

Because appellant was charged with uttering forged checks, it is immaterial whether appellant knew the traveler's checks were counterfeit or fake. The checks on their face require that the purchaser of the checks sign the checks "upon receipt" from the American Express agent and require, as a condition to payment, a countersignature by the person whose signature appears on the instrument. See Code § 8.3A-104(i).[1] Also, unlike cash, traveler's checks have serial numbers which can aid in identifying the original purchaser of the checks. Therefore, the traveler's check, unlike cash or a bearer instrument, has safeguards protecting the owner/purchaser.

Appellant admitted to the investigator that the checks did not belong to her. She acknowledged to the investigator that the checks "probably" belonged to someone else. Thus, when appellant signed or endorsed the checks on the top line for the specimen signature, she altered the checks and misrepresented that she was the legal owner of the checks thereby creating a forged document. See Muhammad, 13 Va. App. at 198, 409 S.E.2d at 820 (When the accused

---

[1]   "Traveler's check" means an instrument that (i) is payable on demand, (ii) is drawn on or payable at or through a bank, (iii) is designated by the term "traveler's check" or by a substantially similar term, and (iv) requires, as a condition to payment, a countersignature by a person whose specimen signature appears on the instrument.

Code § 8.3A-104(i).

endorsed the check, he "fraudulently warranted that he had title to the instrument and that it had not been altered."). When appellant again endorsed the checks on the countersignature line in order to negotiate the checks, she further represented she was the rightful owner of the checks and she knowingly uttered forged documents for her benefit to purchase merchandise at Wal-Mart.[2] Accordingly, the evidence proved that appellant knowingly uttered a forged traveler's check that did not belong to her in a manner that operated to the injury of another. See id. at 196, 409 S.E.2d at 819.

"The fact that an instrument was forged, made payable to the defendant, and endorsed by h[er], is sufficient evidence of the defendant's intent to defraud the drawee." Fitzgerald, 227 Va. at 174, 313 S.E.2d at 395. Appellant, listed as payee, possessed the forged checks and she put them into circulation when she endorsed them and presented them at Wal-Mart as payment for merchandise. From the evidence presented, the trial court properly concluded that appellant uttered the checks knowing them to be forged and that she had both fraudulent and larcenous intent when she used the forged checks to purchase merchandise. See id. "The inferences to be drawn from proven facts, so long as they are reasonable, are within the province of the trier of fact." Hancock v. Commonwealth, 12 Va. App. 774, 782, 407 S.E.2d 301, 306 (1991). Therefore, the evidence was sufficient to prove appellant committed the charged offenses.[3]

Accordingly, we affirm appellant's convictions.

Affirmed.

---

[2] The reverse side of the traveler's checks contains the procedure for acceptance of the checks, providing that the person accepting the check watch the customer countersign the check and compare that signature to the original signature.

[3] We also note that the trial court was not required to accept appellant's statement regarding how she acquired the checks and that she did not know the checks were counterfeit. "The fact finder has the right to reject parts of the evidence as untrue and accept other parts." Tooke v. Commonwealth, 47 Va. App. 759, 768, 627 S.E.2d 533, 537 (2006) (citing Belton v. Commonwealth, 200 Va. 5, 9, 104 S.E.2d 1, 4 (1958)).